# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| KATHLEEN BACON, | Case No.: 18cv139 JM (BLM) |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY and DOES 1-25, | |
| Defendants. | |

This is an age discrimination case in the employment context. Defendant Bed Bath & Beyond of California, LLC ("Bed Bath & Beyond") moves for summary judgment on all of Plaintiff Kathleen Bacon's claims. (Doc. No. 25.) Plaintiff opposes. (Doc. No. 28.) For the reasons discussed below, the court grants Defendant's motion.

## BACKGROUND[1]

Bacon alleges three causes of action against Bed Bath & Beyond: (1) age discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (2) failure to prevent harassment or discrimination in violation of FEHA; and (3) wrongful termination. (Doc. No. 1.)[2]

---

[1] The following facts are taken from the parties' summary judgment submissions. These facts are undisputed unless otherwise noted.

[2] Defendant objects to the following evidence Bacon presents: (1) emails received by Bacon complimenting her work, (2) Bacon's Notice of Termination, (3) Bacon's Separation Agreement, (4) Bacon's statement in her declaration that she was told in

1

In 2004, Bed Bath & Beyond hired Bacon as a Front End Department Manager in its Chula Vista store. In that position, Bacon was responsible for the overall operation of the front end of the store. (Doc. No. 25-2, Bacon Depo at 15.)[3] Bacon was 46 years old when she was hired. In 2006, Bacon transferred to Bed Bath & Beyond's Santee store and continued to work as a Front End Department Manager. Bacon later transitioned to the role of Customer Service Department Manager. In that position, Bacon was responsible for product knowledge training, customer service training, mystery shop scores,[4] the bridal registry program, and overall customer service. (Doc. No. 25-2, Bacon Depo. at 27-28.) In 2013, Michelle Villarreal became Bacon's District Manager for the remainder of her employment with Defendant. Bacon never had "any issues" with Villarreal, and Villarreal never said or did anything to suggest she was biased against Bacon because of her age. (Doc. No. 25-2, Bacon Depo at 41.) In April 2015, Bacon transferred to Defendant's 4S Ranch store and continued working as a Customer Service Department Manager.

In 2016, Bacon was transferred to Defendant's Mission Valley store as a disciplinary action. Bacon was disciplined because she told customers that they should purchase a mattress valued at about $9,000 from a different store and then was not forthright with Villarreal about what she had said to the customers. Villarreal reassigned Bacon as a Bath Department Manager in the Mission Valley store because she believed Bacon was no longer equipped to handle the Customer Service Department Manager role. (Villarreal Decl. ¶ 9.) In this position, Bacon's responsibilities included merchandising, training Bath department associates, providing customer service, generating sales, and assisting with overall management of the department. In her deposition, Bacon testified that her

---

October 2015 that Defendant was no longer hiring Department Supervisors, and (5) Bacon's estimation of other District Managers' ages. (Doc. No. 32-2.) As discussed below, these objections are overruled in part and sustained in part.

[3] All page citations in this order refer to those generated by the court's CM/ECF system.
[4] Mystery shops are covert, anonymous store visits by Bed Bath & Beyond employees or consultants who evaluate stores and personnel. (Doc. No. 25-6, Villarreal Decl. ¶ 5.)

managers never said or did anything to suggest that they were biased against her because of her age. (Doc. No. 25-2, Exh. A at 25, 41-42, 61.)[5]

The same year, 2016, Bed Bath & Beyond's human resources and operations team determined that the company could save costs by reducing the number of Department Managers it employed. (Doc. No. 25-5, Suojanen Decl. ¶ 4.) Before 2016, the company had been in a "multi-year expansion phase, during which time it opened many new stores." (Id. ¶ 3.) When opening new stores, Bed Bath & Beyond found that the Department Managers employed in each store could serve as a benchmark for future growth. (Id.) In 2016, the company's human resources and operations team determined that the Department Manager position had become superfluous as the company's growth slowed. (Id. ¶ 4.) Department Managers were generally scheduled to work several hours of overtime each week and were paid at a higher rate than other hourly employees. (Id.) To save costs, in 2016, Bed Bath & Beyond stopped hiring Department Managers. (Id. ¶ 5.) Instead, the company began to hire new employees in a Department Supervisor position. (Id.) Department Supervisor employees were not generally scheduled to work overtime and were paid a lower hourly rate than Department Managers. (Id.) At some time after October 2015, Bacon's Human Resources District Manager told Bacon that the company would no longer be hiring for the Department Manager position. (Doc. No. 28-2, Exh. 1 at 38-39.)[6]

---

[5] Specifically, Bacon testified that her managers Villarreal, Jim McDowell, Gavin Edwards, Eric Mercado and David Katoulis, never said or did anything to suggest they had a bias against Bacon because of her age. (Id.) McDowell was Bacon's Store Manager for a number of years at the Santee store. (Id. at 24.) Edwards was Bacon's Store Manager at the Santee store from 2014 through 2015, and again in 2016 at the Mission Valley store. (Id. at 40-41, 60-61.) Mercado was Bacon's Store Manager at the 4S Ranch store from April 2015 through 2016. (Id. at 46-47.) Katoulis was Bacon's Assistant Store Manager at the Mission Valley store in 2016. (Id. at 60-61.)

[6] Plaintiff argues that the Human Resources District Manager presented her with an "agreement" and gave Plaintiff the impression that declining to sign this agreement would not jeopardize her employment. (Doc. No. 28 at 2; Doc. No. 28-3, Bacon Decl. ¶ 3.) Plaintiff fails to explain what this "agreement" was. In her deposition, Bacon testified that she does not remember being presented with a written agreement at the meeting with the

Despite some cost savings, Bed Bath & Beyond determined that it would need to eliminate the Department Manager position in its entirety to further reduce payroll expenditures and streamline its workforce. (Suojanen Decl. ¶ 6.) In 2017, Defendant's human resources and operations team instructed all District Managers, including Villarreal, to assess all Department Managers in their districts. (Id. ¶ 7; Villarreal Decl. ¶ 12.) District Managers rated Department Managers on a scale from 1 (lowest) to 3 (highest) in the categories of customer service, business, leadership, and personal effectiveness. (Suojanen Decl. ¶ 8.) District Managers could also provide comments about Department Managers' ratings, whether the employee was eligible to be considered for a Manager-in-Training position, and whether the employee had the potential to become a Store Manager. (Id.)

After all assessments were completed, including Villarreal's assessment of Bacon, the company informed District Managers that Department Managers whose assessment scores met certain criteria were eligible for transfer into Manager-in-Training or Department Supervisor positions. (Id. ¶ 9.) To be eligible for a Manager-in-Training position, a Department Manager needed to either: (a) earn a rating of 3 in both customer service effectiveness and leadership effectiveness and a rating of at least 2.75 on business effectiveness, or (b) be recommended to the position by the District Manager, earn an overall total rating of at least 2.75, and have earned the highest overall rating of all Department Managers in their store. (Cruz Decl. ¶ 5.) To be eligible for a Department Supervisor position, a Department Manager needed to earn a total overall rating of at least 2.75, a customer service effectiveness rating of 3, and a leadership effectiveness rating of at least 2.55. (Id.) Department Managers that did not qualify for a Manager-in-Training or Department Supervisor position would be included in the company's reduction in force and terminated. (Id. ¶ 4.) These employees were terminated "because they were not

---

Human Resources District Manager, did not sign a written agreement, and was not provided with any papers. (Doc. No. 28-2, Bacon Depo. at 39-40.)

meeting performance expectations, and/or lacked promotional potential, and/or were superfluous at their store." (Suojanen Decl. ¶ 9.)

Bacon's overall assessment score was 2.63 and her customer service effectiveness rating was 2. (Cruz-Leach Decl. ¶¶ 5, 6.) Accordingly, Bacon was not eligible for either the Manager-in-Training or Department Supervisor positions. (Id. ¶ 6.) On August 3, 2017, Villarreal informed Bacon that her employment was terminated because her position was being eliminated. (Villarreal Decl. ¶ 13.)

Bacon alleges that she was terminated because of her age. Bacon was 59 when she was terminated. (Doc. No. 30., Exh. 16 at 7.) Eleven other Department Managers in Bacon's district were terminated in August 2017 as part of the reduction in force. (Id. at 7-8.) The ages of these employees, in ascending order, was: 33, 39, 43, 44, 46, 47, 50, 51, 58, 59, and 62. (Id.)[7] Nine Department Managers in Bacon's district were not terminated. (Id. at 9.) The ages of these employees, in ascending order, was: 30, 36, 38, 39, 44, 50, 52, 54, and 57. (Id. at 11.)[8] Accordingly, a majority of both terminated and retained Department Managers were above the age of 40.

## LEGAL STANDARDS

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

---

[7] In her declaration, Bacon appears to estimate the ages of the other Department Managers at the Mission Valley store at the time of the reduction in force. (Doc. No. 28-3, Bacon Decl. ¶¶ 4, 5.) Defendant objects to this estimation, arguing that Bacon did not have personal knowledge of the employees' ages. (Doc. No. 32-2.) This objection is sustained for lack of personal knowledge. See Fed. R. Evid. 602. This order instead refers to the specific ages of employees provided in other exhibits attached to Bacon's opposition. (See Doc. No. 28-2, Exh. 15 at 93; Doc. No. 30 at 6-7, 10.)

[8] Excluding Bacon, there were ten Department Managers at the Mission Valley store at the time Bacon was terminated. Three Department Managers—ages 30, 36, and 39—were not terminated. (Bacon Decl. ¶ 4; Doc. No. 30, Exh. 16 at 11.) The remaining seven terminated Department Managers were ages 33, 39, 43, 44, 46, 47, and 58. (Bacon Decl. ¶ 4; Doc. No. 30, Exh. 16 at 8.)

5

18cv139 JM (BLM)

Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). But Federal Rule of Civil Procedure 56 contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original).

In response to a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal citations omitted). In other words, the nonmoving party may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). The court must examine the evidence in the light most favorable to the nonmoving party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), and any doubt as to the existence of an issue of material fact requires denial of the motion, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## DISCUSSION

Plaintiff asserts three claims: age discrimination, failure to prevent discrimination, and wrongful termination in violation of public policy.

### I. Age Discrimination

#### A. Legal Standards

In relevant part, FEHA makes it unlawful for an employer "to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment" because of age. Gov. Code § 12940(a). Plaintiff's age discrimination claim is governed by the burden shifting framework of McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973). Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354 (2000).[9] First, Plaintiff must establish a prima facie case of discrimination. Id. Next, the burden shifts to the employer to produce evidence "sufficient to raise a genuine issue of fact and to justify a judgment for the employer, that its action was taken for a legitimate, nondiscriminatory reason." Id. at 355-56 (quotations and citation omitted). Lastly, the burden shifts back to the plaintiff to "attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." Id. at 356. "In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias." Id. Throughout the analysis, "[t]he ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." Id.

**B. Prima Facie Case**

Bed Bath & Beyond argues that Bacon fails to present sufficient evidence to establish a prima facie case of discrimination. The court agrees.

Generally, to establish a prima facie case of discrimination Plaintiff must provide evidence that (1) she was a member of a protected class, (2) she was qualified for the position she sought or was performing competently in the position she held, (3) she suffered an adverse employment action, such as termination, and (4) some other circumstance suggests discriminatory motive, such as her replacement by a significantly younger worker with similar qualifications. Id. at 355.

Bacon was 59 at the time she was terminated, thus satisfying the first and third elements of her prima facie case. See id. at 355. Defendant does not dispute that the second element, that Bacon was competently performing her position, is met for Bacon's prima facie case. The analysis thus focuses on the fourth element—whether there are circumstances suggesting discriminatory motive.

---

[9] Bacon does not argue that there is any direct evidence of discrimination. See DeJung v. Superior Court, 169 Cal. App. 4th 533, 549-50 (2008).

Bacon relies on statistical evidence of the ages of retained and terminated Department Managers. She argues that the three Department Managers at the Mission Valley store who were transferred to Department Supervisor positions instead of terminated were ages 30, 36, and 39—with an average age of 35. "[A] prima facie inference of discrimination can arise from evidence that during a work force reduction, a satisfactory age-protected worker was laid off, while younger employees were retained in similar jobs, or were reassigned to positions for which the plaintiff also qualified." Guz, 24 Cal. 4th at 367. However, statistical evidence that is unreliable or gathered from too small a sample pool may not suffice. See id.

Here, the statistical evidence is not probative of the issue of age discrimination for several reasons. First, the statistical evidence does not clearly indicate that members of Plaintiffs' proposed protected class, employees over the age of 40, were treated worse than their younger counterparts. A majority of both terminated and retained Department Managers were over the age of 40. The correlation between an employees' age and their termination is weak when Bacon's entire district is considered. Eleven out of the twenty other Department Managers in Bacon's district were terminated during the reduction in force. (Doc No. 28-2, Exh. 17 at 93; Doc. No. 30, Exh. 16 at 6-7, 10.) The terminated employees were between the ages of 33 and 62, with an average age of 48. (Id.) The nine transferred employees were between the ages of 30 and 57, with an average age of 44. (Id.) More than half of these employees were over the age of 40. (Id.)

Second, Bacon's analysis only considers two variables—the employee's age at the time of the reduction in force and whether the employee was terminated. "The numbers show a statistically significant relationship between these two variables, but [the Ninth Circuit] and others have treated skeptically statistics that fail to account for other relevant variables." Pottenger v. Potlatch Corp., 329 F.3d 740, 748 (9th Cir. 2003) (collecting cases). A critical variable not considered in this analysis is the criteria used to determine whether an employee was eligible for transfer—the employee's performance in customer service, business, leadership, and personal effectiveness.

Lastly, the statistical evidence may not be reliable as it is based on a very small employee pool. See Guz, 24 Cal. 4th at 367. At the time of the reduction in force, there were only ten Department Managers at Bacon's store and twenty total Department Managers in her district.

Bacon also argues that her duties were taken over by younger employees. Bed Bath & Beyond argues that Bacon was not replaced; her job duties were assumed by a number of other preexisting store employees. Plaintiff mischaracterizes the evidence on this issue. In her opposition, Bacon cites to Defendant's interrogatory responses, stating that "Defendant has admitted that many of Plaintiff's duties have been performed by *an* employee who is 30 years old." (Doc. No. 28 at 9) (emphasis added.) This is inaccurate and a substantial misstatement of Defendant's interrogatory response. Defendant's response states that "[t]he ages of the bath department associates who absorbed some of Bacon's duties were: 20, 20, 23, 56, 57, and 69 and Ms. [Redacted] was 30 years old as of August 4, 2017." (Doc. No. 30, Exh. 16 at 5.) Bacon further states in her opposition that the Human Resources District Manager informed her that Department Supervisors held the same job duties as Department Managers, citing to her deposition testimony. (Doc. No. 28 at 7.) But nowhere in the cited portion of her deposition testimony does Bacon state that she was informed that Department Managers and Department Supervisors held the same job duties. (See Doc. No. 28-2, Bacon Depo. at 38-39.)

Bacon fails to present evidence suggesting that she was replaced by younger employees. Bacon does not identify the names, qualifications, or ages of the employees she argues assumed her duties. Nor does she identify which of Bacon's duties were assumed by these employees. Thus, the court does not know whether these employees were similarly qualified, which duties they assumed, or whether they *replaced* Bacon. See Holtzclaw v. Certainteed Corp., 795 F. Supp. 2d 996, 1011 (E.D. Cal. 2011) (finding plaintiff was not replaced by a younger employee who began performing some of plaintiff's duties in addition to the duties he was already performing). This argument is not supported

9

with sufficient evidence to create a prima facie case of discrimination. Accordingly, Plaintiff fails to establish a prima facie case of discrimination.

### C. Legitimate Non-Discriminatory Reasons for Termination

Even if Plaintiff had presented a prima facie case of discrimination, she fails to present any evidence of pretext. Bed Bath & Beyond presents a legitimate, non-discriminatory explanation for Bacon's termination. See Guz, 24 Cal. at 367-68. Bacon's position was useful while the company was expanding, but as growth slowed, Bed Bath & Beyond's human resources and operations team determined that Department Managers were no longer necessary. Employees in the Department Supervisor position could perform the necessary functions of Department Managers at a lower hourly rate and with fewer overtime hours. In 2016, the company stopped hiring Department Managers. In 2017, the company determined that it needed to further reduce costs by eliminating the Department Manager position altogether. Employees were included in the reduction in force based on assessments by District Managers of their customer service, business, leadership, and personal effectiveness. Based on her assessment scores, Bacon was not qualified for transfer to another position and was included in the reduction in force.

The burden thus shifts to Bacon to establish pretext. "A plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Dep't of Fair Employment & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 746 (9th Cir. 2011) (quotations and citation omitted). "If a plaintiff uses circumstantial evidence to satisfy this burden, such evidence must be specific and substantial." Id. (quotations and citation omitted).

Bacon admits that Villareal, the District Manager who provided her disqualifying assessment scores, never did or said anything to suggest that she was biased against Bacon because of her age. (Doc. No. 25-2, Exh. A at 41-42.) Bacon would thus have the court believe that the entire assessment-based procedure Bed Bath & Beyond implemented to

10

18cv139 JM (BLM)

identify employees for inclusion in the reduction in force was a sham. She fails to present any evidence suggesting this is the case.

First, Bacon argues that her annual performance reviews indicate she consistently met and exceeded expectations. Bacon's performance reviews are decidedly mixed. Bacon's annual performance evaluations used the following scale, from lowest to highest score: "Doesn't Meet Expectations" ("DM"), "Meets Some Expectations" ("MS"), "Meets Expectations" ("ME"), "Exceeds Expectations" ("EE"), and "Significantly Exceeds Expectations" ("SE"). Bacon's annual performance reviews indicate that her store supervisors believed she met most expectations and exceeded some expectations. But they also indicate that Bacon was consistently asked to improve her attendance and accountability for employees and training in her department.

| Year | Total SE Scores | Total EE Scores | Total ME Scores | Total MS Scores | Total DM Scores | Customer Service EE Scores | Customer Service ME Scores | Customer Service MS Scores |
|---|---|---|---|---|---|---|---|---|
| **2005** | 0 | 16 | 34 | 0 | 0 | 2 | 4 | 0 |
| **2006** | 0 | 6 | 41 | 2 | 0 | 0 | 5 | 1 |
| **2007** | 0 | 16 | 27 | 1 | 0 | 2 | 4 | 0 |
| **2008** | 0 | 14 | 30 | 1 | 0 | 1 | 5 | 0 |
| **2009** | 0 | 11 | 30 | 1 | 0 | 2 | 5 | 0 |
| **2010** | 0 | 6 | 36 | 1 | 0 | 1 | 6 | 0 |
| **2011** | 0 | 4 | 38 | 1 | 0 | 1 | 6 | 0 |
| **2012** | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| **2013** | 0 | 3 | 39 | 1 | 0 | 1 | 6 | 0 |
| **2014** | 0 | 2 | 39 | 5 | 0 | 1 | 5 | 1 |
| **2015** | 0 | 3 | 34 | 6 | 0 | 1 | 5 | 2 |
| **2016** | 0 | 2 | 29 | 11 | 0 | 0 | 2 | 3 |

(Doc No. 28-2, Exhibit 2-12.)[10]  In the last few years of her employment, between 2013 and 2016, Bacon received fewer "Exceeds Expectations" scores and more "Meets Some Expectations" scores.  In these years, Bacon also received more "Meets Some Expectations" scores in her customer service performance than in all other years combined.  In 2016, the year before she was terminated, Bacon received her lowest scores yet.  She received particularly low scores for her customer service performance.  During that year, after Bacon was dishonest about an interaction with customers, Villarreal transferred Bacon to a different store and position because she did not believe that Bacon was equipped to handle the Customer Service Department Manager role.  In 2017, Villarreal assessed Bacon's performance.  Bacon received an overall score of 2.63 and a customer service score of 2, on a scale of 1 to 3.  Bacon's scores were too low to qualify her for transfer to a Department Supervisor or Manager-In-Training position.  These scores were consistent with her recent annual review scores.  Without more, Bacon's annual reviews do not suggest that she was terminated because of her age or that Defendant's reasons for termination were pretextual.[11]

   Second, Bacon argues that she was never placed on a performance improvement plan.[12]  Bacon was not terminated for cause.  She was terminated because her assessment scores did not qualify her for transfer to another position, and thus, she was included in the reduction in force.  Although Bacon's assessment scores were based on her performance,

---

[10] The summary judgment record does not contain Bacon's 2012 annual review.
[11] Bacon attaches emails from customers complimenting her performance. (Doc. No. 28-2, Exh. 13 at 78-83.) Defendant objects to these emails as lacking foundation on personal knowledge, hearsay, and lack of authentication grounds. (Doc. No. 32-2.) Defendant's objection is overruled, however, the court accords minimal weight to these emails because of the lack of authentication and hearsay concerns.
[12] Bacon argues that she was "never placed on any type of performance improvement plan," citing her deposition testimony. (Doc. No. 28 at 12.) In her cited deposition testimony, Bacon states only that she was not placed on a performance improvement plan *for her attendance issues*. (Doc. No. 28-2, Exh. 1 at 44.)

nothing in the record suggests that a performance plan was necessary prior to her termination.

Third, Bacon argues that the termination document and separation agreement do not mention her performance.[13] In her deposition, Bacon testified that at the time of her termination she was not told that performance was a factor in the decision to terminate her. (Doc. No. 28-2, Exh. 1 at 43.) The undisputed evidence indicates that Bacon was included in the reduction in force because her overall assessment score and customer service score did not meet the cutoff for transfer to another position. Defendant's failure to communicate that Bacon's performance was assessed when deciding whether she qualified for transfer to another position does not conflict with this evidence.

Lastly, Bacon argues that her position was not actually eliminated because after her termination she saw the Department Supervisor position posted online. Bacon fails to point to any evidence suggesting that the fact that Defendant was hiring Department Supervisors meant that the Department Manager position was not actually eliminated. Undisputed declarations from Bed Bath & Beyond's human resources employees and supervisors state that the position was eliminated.[14] The fact that Defendant was hiring Department Supervisors, a separate position, is not evidence that the Department Manager position was not eliminated.[15]

---

[13] Defendant objects to Bacon's Notice of Termination and Separation Agreement on lack of foundation, lack of authentication, and hearsay grounds. This objection is overruled as these documents are statements of an adverse party. See Fed. R. Evid. 801(d)(2).

[14] Defendant's employees declare that the Department Supervisor position was created before the Department Manager position was dissolved because Department Supervisors were paid a lower hourly rate and scheduled to work less overtime. Eventually, Defendant's employees declare, the Department Manager position was eliminated. Bacon does not dispute these facts.

[15] Bacon also reiterates her arguments that her duties were assumed by a younger employee and most terminated employees at the Mission Valley store were over the age of 40. These arguments are unavailing for the same reasons the court rejected them above.

In sum, Bacon fails to proffer any evidence suggesting that Defendant's reason for terminating her was pretextual. It strains credulity for Plaintiff to argue on this record that the entire reduction in force protocol leading up to her termination was a pretext when she ultimately presents no evidence—direct, circumstantial, or otherwise—that this was the case. Defendant's motion for summary judgment on Bacon's age discrimination claim is granted as she fails to present a prima facie case of discrimination or any evidence suggesting that Defendant's legitimate, non-discriminatory reason for Bacon's termination was pretextual.

## II. Remaining Claims

Plaintiff concedes that her claims for wrongful termination and failure to prevent discrimination and harassment are based on the same facts and derivative of her age discrimination claim. (Doc. No. 28 at 13-14.) Accordingly, Plaintiff fails to raise a genuine issue of material fact for her remaining claims as she does not present sufficient evidence of discrimination. See also Dickson v. Burke Williams, Inc., 234 Cal. App. 4th 1307, 1315-17 (2015) (failure to prevent discrimination or harassment claim requires a showing of actionable harassment or discrimination); Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 229 (1999) (granting summary judgment on wrongful termination claim because FEHA discrimination claim failed). The court need not address Bacon's request for punitive damages as she fails to raise a genuine issue of material fact for any of her claims.

## CONCLUSION

Defendant's motion for summary judgment is granted. The Clerk of Court is instructed to enter judgment in Defendant's favor.

IT IS SO ORDERED.

DATED: April 18, 2019

JEFFREY T. MILLER
United States District Judge